LEE LITIGATION GROUP, PLLC
C.K. Lee (*To be admitted pro hac vice*)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, Nationwide FLSA Collective*
*Plaintiffs and the Class*

PEIFFER WOLF CARR KANE CONWAY & WISE
Brandon Wise, Esq. (MO - 67242)
818 Lafayette Avenue, Floor 2
St. Louis, MO 63104
Tel: (314) 833-4825
*Attorneys for Plaintiff, Nationwide FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| LINCSTON JONES,<br>*on behalf of himself, Nationwide FLSA*<br>*Collective Plaintiffs and the Class*,<br><br>Plaintiff,<br><br>v.<br><br>CENTENE CORPORATION,<br>CENTENE MANAGEMENT COMPANY<br>      LLC,<br>WELLCARE HEALTH PLANS, INC., and<br>COMPREHENSIVE HEALTH<br>      MANAGEMENT, INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION**<br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff LINCSTON JONES ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY LLC, WELLCARE HEALTH PLANS, INC., and COMPREHENSIVE HEALTH MANAGEMENT, INC., (collectively "Defendants" or "Centene"), and states as follows:

1

## INTRODUCTION

1.      Defendants forced employees working as salespersons to work overtime hours by implementing minimum productivity quotas.  In order to satisfy the quotas, employees would have to work in excess of forty (40) hours per week.  At the same time that Defendants caused employees to work overtime hours, Defendants misclassified these employees as outside salespersons' exempt from overtime.

2.      Defendants operate a leading healthcare enterprise selling healthcare insurance products to individuals and families across the country.  Defendants provide healthcare insurance products to 1 in 15 Americans across all 50 U.S. states. *See* **Exhibit A**, Press Release of Defendants.

3.      Plaintiff worked from his home office as a salesperson for Defendants and was required to work overtime hours to meet Defendants' productivity quotas.  Plaintiff seeks to represent a class across the United States, who like himself, were misclassified as exempt outside salespersons and denied overtime.  To avoid compensating employees like Plaintiff for their overtime hours, Defendants had a policy of misclassifying salespersons working from home as exempt outside salespersons in violation of federal law. *See* 29 CFR §541.502 (Stating an employer's place of business includes an employee's home office).  The improper classification of salespersons like Plaintiff continued despite Pandemic initiated state and local lockdowns across the United States where Centene knew outside salespersons could not have been engaged in 'outside sales.'  Due to these lockdowns, Centene was well aware of the misclassification of these employees.

4.      Plaintiff also alleges that Defendant fraudulently failed to pay commission income to Class workers.  Defendants induced higher sales by distributing emails and paperwork promising higher commission rates than were actually delivered to employees.   Due to Defendants

failure to properly pay promised commissions to employees, Class members are owed compensation for: (1) breach of contract; (2) negligent misrepresentation; (3) promissory fraud; (3) unjust enrichment; (4) statutory penalties; (5) liquidated damages; and (6) attorneys' fees and costs.

5.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to misclassification; (2) liquidated damages; and (3) attorneys' fees and costs.

6.      Plaintiff also alleges, pursuant to the Texas Minimum Wage Act ("TMWA"), Texas Labor Code § 62.014 *et seq*, that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to misclassification.

7.      Plaintiff also allege, pursuant to Louisiana's Wage Payment Act ("LWPA"), Louisiana Revised Statutes §23:631 *et seq*, that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages overtime due to misclassification; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

8.       Plaintiff brings this wage and hour class action on behalf of himself and all persons, who during the applicable limitations period up to and including the present, were similarly underpaid by Defendants in violation of protections afforded under the FLSA, parties' contracts, laws of equity, and the laws and regulations passed in the District of Columbia and the following states:

1) Alaska: Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;
2) Arizona: Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;
3) Arkansas: Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

4) California: California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

5) Colorado: Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

6) Connecticut: Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

7) Delaware: Delaware Minim Wage Law, Delaware Code Title 19-90 *et seq.*;

8) District of Columbia: District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

9) Florida: Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

10) Georgia: Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

11) Hawaii: Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 § *388-1 et seq.;*

12) Idaho: Idaho the Minimum Wage Law 44-1501 *et seq.*, Hours Worked Act §44-1201 *et seq.*, and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;

13) Illinois: Illinois Labor Laws, 820 ILCS 105 *et seq.*;

14) Indiana: Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

15) Iowa: Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

16) Kansas: Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

17) Kentucky: Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

18) Louisiana: Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

19) Maine: Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

20) Maryland: Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

21) Massachusetts: Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

22) Michigan: Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

23) Minnesota: Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

24) Missouri: Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

25) Montana: Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

26) Nebraska: Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq.*, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

27) Nevada: Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60;

28) New Hampshire: New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

29) New Jersey: New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

30) New Mexico: New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

31) New York: New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

32) North Carolina: North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

33) North Dakota: North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

34) Ohio: Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

35) Oklahoma: Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

36) Oregon: Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

37) Pennsylvania: Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

38) Puerto Rico: Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

39) Rhode Island: Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

40) South Carolina: South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

41) South Dakota: South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

42) Texas: Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

43) Vermont: Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

44) Virginia: Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

45) Washington: Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

46) West Virginia: West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

47) Wisconsin: Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*; and

48) Wyoming: Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

## JURISDICTION AND VENUE

9.      Defendants are subject to personal jurisdiction in this judicial district.

10.     This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff LINCSTON JONES' state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

12.     This Court is empowered to issue a declaratory judgement pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

13.     Plaintiff LINCSTON JONES is a resident of Dallas County, Texas.

14.     At all relevant times, Defendant CENTENE CORPORATION has wholly owned and managed Defendant CENTENE MANAGEMENT COMPANY LLC.

15.     At all relevant times, Defendant WELLCARE HEALTH PLANS, INC. has wholly owned and managed Defendant COMPREHENSIVE HEALTH MANAGEMENT, INC.

16.     On January 23, 2020, Defendant CENTENE CORPORATION acquired Defendant WELLCARE HEALTH PLANS, INC., and all its subsidiaries, becoming the parent corporation to all Defendants in this action.  As of January 23, 2020, Defendant CENTENE CORPORATION has wholly owned, and managed, Defendants CENTENE MANAGEMENT COMPANY LLC, WELLCARE HEALTH PLANS, INC., and COMPREHENSIVE HEALTH MANAGEMENT, INC.

17.     Defendant CENTENE CORPORATION is a foreign business corporation operating in New York and organized under the laws of Delaware. Its principal executive office is located at 7700 Forsyth Blvd., St. Louis, MO 63105, and its address for service of process purposes

is c/o CT Corporation System, 28 Liberty Street, New York, NY, 10005. Defendant CENTENE CORPORATION is registered to conduct business in New York.

18.     Defendant CENTENE MANAGEMENT COMPANY LLC, a wholly owned subsidiary of Defendant CENTENE CORPORATION, is a foreign business corporation operating in New York and organized under the laws of Wisconsin. Its principal executive office is located at 7700 Forsyth Blvd., St. Louis, MO 63105, and its address for service of process purposes is c/o CT Corporation System, 28 Liberty Street, New York, NY, 10005. Defendant CENTENE MANAGEMENT COMPANY LLC is registered to conduct business in New York.

19.     Defendant WELLCARE HEALTH PLANS, INC., a wholly owned subsidiary of Defendant CENTENE CORPORATION, is a foreign business corporation operating in New York and organized under the laws of Florida. Its principal executive office is located at 7700 Forsyth Blvd., St. Louis, MO 63105, and its address for service of process purposes is c/o CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

20.     Defendant COMPREHENSIVE HEALTH MANAGEMENT, INC. is a foreign business corporation operating in New York and organized under the laws of Florida. Its principal executive office is located at 7700 Forsyth Blvd, St. Louis, MO 63105, and its address for service of process purposes is c/o CT Corporation System, 28 Liberty Street, New York, NY, 10005. Defendant COMPREHENSIVE HEALTH MANAGEMENT, INC. is registered to conduct business in New York.

21.     Defendant maintains offices and hires employees throughout the entire United States, including offices in the following: Alabama (1), Arizona (6), Arkansas (1), California (31), Connecticut (4), Delaware (1), Florida (20), Georgia (3), Hawaii (1), Illinois (1), Iowa (1), Kansas (3), Kentucky (6), Louisiana (4), Maine (1), Maryland (1), Massachusetts, Michigan (2),

Minnesota (1), Mississippi (1), Missouri (4), Nebraska, Nevada (2), New Hampshire (2), New Jersey (1), New Mexico (2), New York (5), North Carolina (4), Ohio (4), Oklahoma (1), Oregon (1), Pennsylvania (3), Rhode Island (1), South Carolina (2), Tennessee (2), Texas (9), Vermont, Washington (4), and Wisconsin (3) (the "Centene Offices"). *See* **Exhibit B.**

22.     The Centene Offices share common central management, Human Resources team, central payroll, and central marketing team.

a) Each Centene Office location is engaged in the same business of providing insurance sales services.

b) All the Centene Offices share the same trade name "Centene " with the same logo and are marketed jointly on one (1) common website: (https://centene.com/). See **Exhibit B**.

c) The Centene Offices within New York State are commonly owned and operated by Centene.

d) All Centene Offices share the common, corporate office address, common number, and vendor for employment verification. See **Exhibit C**.

e) Job openings of Centene Offices in multiple states were posted on the same Webpage for prospective employees to apply. See also **Exhibit D** for the "Careers" Webpage**.**

f) All Centene Offices share common social media accounts, including:  Facebook, LinkedIn, YouTube, Twitter**.**

g) All Centene Offices share a common employee handbook. *See* **Exhibit E**.

h) All Centene Offices share consolidated financials, which may be seen by Defendant WELLCARE HEALTH PLANS, INC.'s 10-k filing with the SEC dated February 12, 2019, and Defendant CENTENE CORPORATION's 10-k filing dated February 22, 2020.

23.     At all relevant times, the Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, applicable state law, and the regulations thereunder.

24.     At all relevant times, the work performed by Plaintiff, Nationwide FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendant.

## NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

25.     Plaintiff brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-managerial employees misclassified by Defendants as exempt outside sales persons, who engaged or facilitated in the sales, consultation, enrollment and/or recertification of clients (including but not limited to all marketing sales associates, sales agents, consultant associates, benefit specialists, benefits consultant, and eligibility specialists throughout the United States) employed by Defendants on or after the date that is three (3) years before parties' tolling agreement in this matter, which was fully executed on October 25, 2021 ("Nationwide FLSA Collective Plaintiffs").

26.     At all relevant times, Plaintiff and Nationwide FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek due to a policy of improper classification of non-exempt employees as exempt. The claims of Plaintiff stated herein are essentially the same as those of Nationwide FLSA Collective Plaintiffs.

27.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The Nationwide FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action,

their names and addresses are readily available from Defendants. Notice can be provided to the Nationwide FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

28.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-managerial employees misclassified by Defendants as exempt outside salespersons, who engaged or facilitated in the sales, consultation, enrollment and/or recertification of clients (including but not limited to all marketing sales associates, sales agents, consultant associates, benefit specialists, benefits consultant, and eligibility specialists throughout the United States or individual subclasses thereof) employed by Defendants in the three (3) years –or the relevant statutory period pursuant to each states applicable laws of labor, laws regarding contract, and laws of equity – before parties' tolling agreement in this matter, which was fully executed on October 25, 2021. (the "Class Period").

29.     All said persons, including Plaintiff is referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

30.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants, as alleged herein, of improperly classifying employees as exempt. Defendants'

corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures. As noted above, Defendants' classified the Class members as exempt outside salespersons despite these employees working almost exclusively from their home-offices.

31.     To the extent necessary, Plaintiff will designate subclasses for each of the States where Defendants have employees.

32.     The Class also includes a subclass of employees who all worked for Defendants and were all subject to the same underpayment of commissions for the enrollments and sales made between the months of November 2019 to January 2020 ("Commission Subclass"). Plaintiff is a member of the Commission Subclass.

33.     During the 2019 open-enrollment season, Commission Subclass members were induced into working extra hours and producing extra sales by way of a fraudulently published commission structure.  Open enrollment is a period of time each year when individuals and businesses can sign up for health insurance or change health plans.  Outside of Open Enrollment, individuals and businesses can only change plans due to a life event that qualifies for a Special Enrollment Period.  As such, the open enrollment period is especially important for insurance providers for purposes of retaining and enrolling new and additional customers.  The open enrollment period takes place from the month of November through mid-January each year.

31.     The commission structure repeatedly published to Commission Subclass members prior to the 2019 open-enrollment season was intended to incentivize and induce extra work and sales from the Commission Subclass members by way of a new commission structure promising larger

commissions for employees should certain sales goals be reached. Plaintiff and Commission Subclass members reached the sales goals set by Defendants. On February 14, 2020, after Commission Subclass members reached sales goals set by Defendants, Defendants WELLCARE HEALTH PLANS, INC.'s Vice President of Field Sales and Marketing stated the following in an email to employees: "Please be assured that the miscommunication regarding commissions was purely my mistake due to our misinterpretation of the commission plan…"  As such, Defendants induced extra work, further hours, and greater sales from Plaintiff and Commission Subclass members all to Defendants' benefit, but never provided Commission Subclass members the agreed upon compensation for such work and sales.

32.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class. The members of each state's potential subclass total over forty (40) as well. Commission Subclass members also total over forty (40).

33.     Plaintiff is able to fairly and adequately protect the interests of the Class, and the Commission Subclass, and has no interests antagonistic to the Class or Subclass.

34.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

35.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a

corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

36.     Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

37.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

(a)     Whether Defendants employed Plaintiff and Class Members within the meaning of the state labor laws;

(b)     What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Plaintiff and Class Members properly;

(c)     At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

(d)     Whether Defendants properly notified Plaintiff and Class Members of their pay rates;

(e)     Whether Defendants paid Plaintiff and Class Members the proper overtime compensation;

(f)     Whether Defendants misclassified Plaintiff and Class Members as exempt from overtime;

(g)     Whether Defendants paid Plaintiff and Class Members for all hours worked;

(h)     Whether Defendants provided proper wage statements to Plaintiff and Class Members;

(i)     Whether Defendants provided proper wage and hour notices to Plaintiff and Class Members;

(j)     Whether Defendants paid proper commissions to Plaintiff and Commission Subclass members; and

(k)  Whether Defendants properly compensated Plaintiff and Commission Subclass members at the rate promised by Defendants.

## STATEMENT OF FACTS

38.  On or about November of 2016, Defendants hired Plaintiff to work as a benefits consultant and sales agent for Defendants' Louisiana office located at 2424 Edenborn Ave, Metairie, LA 70001 ("Louisiana Office").  In June of 2020, Plaintiff began working from Defendants' Texas office ("Texas Office"). Plaintiff's employment with Defendants ended in April of 2021.

39.  Throughout Plaintiff's employment at the Louisiana Office, Plaintiff was paid at an annual salary of $30,000 in addition to the commission that he earned. When Plaintiff began working at the Texas Office, he was compensated at an annual salary of $55,000 in addition to the commission he was entitled to.

40.  In maintaining its business, Defendants' central management enacted a policy of establishing and setting quotas for virtually every aspect of Defendants' business.  Such quotas for those engaged in customer support involved the number of customer issues which needed to be resolved in a day.  For those engaged in selling Defendants' insurance packages, such quotas included the number of sales, i.e., enrollments that an employee had to obtain each quarter. Employees working as eligibility specialists had quotas for the review of customer documents to verify qualifying eligibility for various programs.

41.  Due to company pressure to produce and because it was not possible to meet production quotas working only during a forty (40) hour workweek, Plaintiff and Class Members, who were misclassified as exempt outside salespersons, had no choice but to engage in work activities beyond forty hours or risk termination.  Plaintiff and his coworkers took calls, inputted

data, reviewed paperwork, and engaged in work at all times of the day at the office or at home. Defendants had full knowledge of what their quotas and policies engendered as Plaintiff and Class Members would submit completed forms and applications necessary to enrollment and/or approval indicating Plaintiff and Class Members were working overtime, when Defendants did not pay them for their overtime hours.

42.     Defendants' quotas were used as a mechanism to pressure unpaid overtime hours from their employees. For Plaintiff to meet his production quotas, he needed to sign up at least (12) additional members per month, and during 'open enrollment,' the period between October and December of each year, Plaintiff's required enrollment per month more than doubled.  The progress of meeting these quotas was reviewed every three months. To meet these quotas, Plaintiff typically worked 20-30 hours of overtime per week.

43.     Even as Defendants induced overtime work from employees, Defendants maintained a policy of misclassifying employees as exempt from overtime.

44.     Nationwide FLSA Collective Plaintiffs and Class Members were all required to fill similar quotas and regularly worked over forty (40) hours per week to meet the demands of Defendants or risk termination. Despite working significant overtime, Defendants failed to pay Nationwide FLSA Collective Plaintiffs and Class Members their earned overtime premium compensation.

45.     Instead, by misclassifying Plaintiff and Class members as outdoor salespersons, Defendants wrongfully deprived Plaintiff of considerable owed overtime compensation.

46.     Defendants began misclassifying Plaintiff, and other sales employees as exempt outside salespersons as of March of 2020.  On or around March 1, 2020, State and local governments began instituting lockdown orders, forcing employees classified as outside

salespersons to conduct all work from their home offices.  During this time, there can be no factual dispute that on a nationwide basis, all employees' sales activities occurred from a fixed site (their home office), which was not the customer's address.  During government enacted lockdowns, Plaintiff and Class members, when not working from Defendants' offices, engaged in the making of sales from their home offices using modern technology such as phone-calls, emails, and videoconferencing.  Plaintiff and other similarly situated employees were misclassified.  In accordance with the FLSA and state law an employer's place of business includes an employee's home office.  *See* 29 CFR §541.502.

47.     Even after government lockdowns, customers, facilities, and business nationwide would continue to refuse to engage in face-to-face meetings.  As clients did not want to engage in face-to-face meetings and Plaintiff and Class members continued to make sales from home-offices using modern technology such as phone-calls, emails, and videoconferencing.

48.     Defendants are aware of the lockdowns occurring across the country and that the work engaged by Class members were being conducted from home offices. This failure to pay overtime through a scheme to misclassify employees was clearly a willful act on the part of Defendants, as Defendants continued to label employees as outside salespersons throughout periods of high outbreak of the COVID virus.  Defendants are fully aware that employees are and were not engaging in sales at customers' places of business and that salespersons conduct all, or nearly all, sales from their home offices.

*Fraudulent Commission Payment Allegations*:

49.     Employees of Defendants who were paid on commission were also victims of the "Open Enrollment Scandal," which occurred in 2020.  During the open enrollment season of 2020, from November 1, 2019 to December 31, 2020, Defendants induced higher sales by distributing

emails and paperwork promising higher commission rates than were actually delivered to employees.

50.     In or around August of 2019, Defendants began publishing a new commission structure for the open enrollment period lasting from November 1, 2019 to January 31, 2020 ("Open Enrollment Period"). This new commission structure promised significantly higher commissions to those employees who met certain sales metrics.

51.     Throughout the Open Enrollment Period Defendants published the expected commission for its employees. On or around, November 19, 2019, November 26, 2019, and December 5, 2019, Defendants published these higher commissions to employees and Commission Subclass members.

52.     Throughout the Open Enrollment Period, the Commission Subclass members were induced into working extra hours and producing extra sales by way of a fraudulently published commission structure.

53.     The commission structure and expected commissions repeatedly published to Commission Subclass members was intended to incentivize and induce extra work and sales from the Commission Subclass members by way of a new commission structure promising larger, approximately twice the normal, commissions for employees should certain sales goals be reached.

54.     Plaintiff and Commission Subclass members reached the sales goals set by Defendants. On February 14, 2020, after Plaintiff and Commission Subclass members reached sales goals set by Defendants, Defendant WELLCARE HEALTH PLANS, INC.'s Vice Presidents of Field Sales and Marketing began informing employees that they would not receive commissions based on the higher commission-based structure promised by Defendants.

55.     Such Vice Presidents of Defendants included Jeff Ray, who informed Commission

Subclass members via email that "Please be assured that the miscommunication regarding commissions was purely my mistake due to our misinterpretation of the commission plan…"

56. Defendants induced extra work, further hours, and greater sales from Plaintiff and Commission Subclass members all to Defendants' benefit, but never provided Commission Subclass members the promised compensation for such work and sales.

57. Plaintiff retained Lee Litigation Group, PLLC to represent himself, Nationwide FLSA Collective Plaintiffs, and the Class Members in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT
## ON BEHALF OF PLAINTIFF AND NATIONWIDE FLSA COLLECTIVE PLAINTIFFS

58. Plaintiff realleges and reavers by reference all allegations in the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

59. At all relevant times, Defendants were and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and Nationwide FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

60. At all relevant times, Defendants employed Plaintiff and Nationwide FLSA Collective Plaintiffs within the meaning of the FLSA.

61. At all relevant times, Defendants had gross annual revenues in excess of $500,000.

62. At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and Nationwide FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek. Defendants

instituted their wrongful policy of failing to pay Plaintiff and Nationwide FLSA Collective Plaintiffs the overtime compensation owed, by misclassifying Plaintiff and Nationwide FLSA Collective Plaintiffs as exempt employees when they were in fact non-exempt employees entitled to overtime payments.

63.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiff and Nationwide FLSA Collective Plaintiffs at the statutory overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

64.     Defendants failed to properly disclose or apprise Plaintiff and Nationwide FLSA Collective Plaintiffs of their rights under the FLSA.

65.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and Nationwide FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

66.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and Nationwide FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, plus an equal amount as liquidated damages.

67.     Records, if any, concerning the number of hours worked by Plaintiff and Nationwide FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and Nationwide FLSA Collective Plaintiffs are in the possession and custody of Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

68.     Plaintiff and Nationwide FLSA Collective are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to the FLSA.

## COUNT II

## VIOLATION UNDER TEXAS LABOR LAW ON BEHALF OF PLAINTIFF AND CLASS MEMBERS

69.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

70.     At all times relevant to this action, Plaintiff and Texas Class Members were employed by Defendants within the meaning of the TMWA. Texas Labor Code §61.014.

71.     During Plaintiff and Class Members employment, Defendants failed to pay Plaintiff and Texas Class Members for all hours that they worked.

72.     Defendants willfully violated Plaintiff and Texas Class Members' rights by failing to pay them all wages owed to them, including overtime compensation at the statutory rate of time-and-one-half, for all hours worked due to Defendants' policy of misclassifying Plaintiff and Class Members as exempt employees when they were in fact non-exempt employees.

73.     Defendants failed to properly reimburse Texas Class Members for their expenses, in violation of the Texas Labor Laws.

74.     Due to Defendants' violations, Plaintiff and Texas Class Members are entitled to recover from Defendants  their unpaid wages, including overtime,  due to Defendants' policy of misclassifying Plaintiff and Class Members as exempt employees when they were in fact non-exempt employees, damages for unreasonably delayed payments, reasonable attorneys' fees,

liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the Texas Labor Laws.

## COUNT III

### VIOLATION OF LOUISIANA STATE WAGE AND HOUR LAWS

75.     Plaintiff, realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

76.     It is unlawful under Louisiana law for an employer to require or permit an employee to work without paying compensation for all hours worked.

77.     It is unlawful under Louisiana law for an employer to require or permit a non-exempt employee to work in excess of 40 hours per week without paying overtime. *Kidder v. Statewide Transp., Inc.*, 2013-594 (La. App. 3 Cir. 12/18/13), 129 So. 3d 875.

78.     At all times relevant to this action, Plaintiff and Louisiana Class Members were employed by Defendants within the meaning of the Louisiana Labor Laws.

79.     During Plaintiff's and Louisiana Class Members' employment, Defendants failed to pay Plaintiffs and Louisiana Class Members the mandated minimum wage for each hour that they worked.

80.     Defendants willfully violated Plaintiff and Louisiana Class Members' rights by failing to pay them wages, including overtime compensation at the statutory rate of time-and-one-half, for all hours worked due to Defendants' policy of misclassifying Plaintiff and Class Members as exempt employees when they were in fact non-exempt employees.

81.     Due to Defendants' violations, Plaintiffs and Louisiana Class Members are entitled to recover from Defendants their unpaid wages, including overtime, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs

and disbursements of the action, pursuant to the Louisiana State Wage Laws.

**COUNT IV**

**VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS**

82.    Plaintiff realllege and reaver by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

83.    At all relevant times, Plaintiff and Class Members were employed by Defendant within the meaning of the applicable state wage and hour laws.

84.    Defendants knowingly and willfully violated Plaintiff and Class Members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek due a policy of misclassifying employees.

85.    Defendants knowingly and willfully failed to provide proper wage statements and notices to Plaintiff and Class Members, as required under the applicable state wage and hour laws.

86.    Due to Defendants state law violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

**COUNT V**

**CLASS ALLEGATIONS - BREACH OF CONTRACT**

87.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

88.    Plaintiff on behalf of himself and Commission Subclass members alleges that at all times material hereto, Plaintiff and the Commission Subclass members performed fully their

23

contractual obligations, namely—to generate sales on behalf of Defendants pursuant to Defendants' commission structure.

89.     Defendants unfairly interfered with Plaintiff and the Commission Subclass members' rights under their contract by publicizing and guaranteeing commission rates, which Defendants never delivered.

90.     As a direct and proximate result of Defendants' failure to act fairly and in good faith, Plaintiff and the Commission Subclass members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VI

## CLASS ALLEGATIONS - PROMISSORY FRAUD

91.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

92.     In order to induce Plaintiff and Commission Subclass members to work extra hours and generate greater sales, Defendants affirmatively promised Plaintiff and Commission Subclass members higher commission rates per sale if certain metrics were met.

93.     Defendants' representations as set forth above were false and fraudulent, the Defendants knew that the representations were false and fraudulent at the time they were made, and Defendants did not intend to honor these representations.

94.     Plaintiff and Commission Subclass members were not aware of the falsity of Defendants' representations, and reasonably and actually relied on them in accepting employment with the Defendants.

95.     As a direct and proximate result of Defendants' false and fraudulent misrepresentations, Plaintiff and Commission Subclass members have sustained damages in an amount according to proof at trial.

96.     Plaintiff and Commission Subclass members are informed and believe, and on that basis allege, that Defendants false and fraudulent misrepresentations were done with fraud and malice and in conscious disregard of Plaintiff and the Commission Subclass members' rights.

97.     Plaintiff and Commission Subclass members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VII

## CLASS ALLEGATIONS - NEGLIGENT MISREPRESENTATION

98.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein

99.     In order to induce Plaintiff and Commission Subclass members to work extra hours and generate greater sales, Defendants affirmatively promised Plaintiff and Commission Subclass members: that Plaintiff and Commission Subclass members would be paid commissions at a certain rate.

100.    Defendants' representations as set forth above were false, were false at the time the agreements were made, and Defendants made these misrepresentations without reasonable ground for believing them to be true when made.

101.    Plaintiff and Commission Subclass members were not aware of the falsity of Defendants' representations, and reasonably and actually relied on them in accepting employment with the Defendants.

102.    As a direct and proximate result of Defendants' false misrepresentations, Plaintiff and Commission Subclass members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT VIII

## CLASS ALLEGATIONS - UNJUST ENRICHMENT

103.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

104.    By virtue of Defendants' conduct as alleged herein, and Plaintiff and Commission Subclass members' performance, Defendants were unjustly enriched by the Plaintiff and Commission Subclass members' conduct and did not compensate Plaintiff and Commission Subclass members fully.

105.    The circumstances are such that it would be inequitable to allow Defendants to retain the excess benefit from Plaintiff and Commission Subclass members conduct without paying fair value for it.

106.    As a direct and proximate result of Defendants wrongful withholding of funds collected that should have been paid to Plaintiff and Commission Subclass members, Plaintiff and Commission Subclass members have sustained damages in an amount according to proof at trial.

107.    Defendants' withholding of proper compensation from employees was done with malice and in conscious disregard of Plaintiff and Commission Subclass members rights, with the

intent to cause injury to Plaintiff and Commission Subclass members. Plaintiff and Commission Subclass members are entitled to recovery of the full amount of wrongfully withheld or diverted payments, punitive damages due to egregious conduct, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of himself, Nationwide FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the applicable state laws;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages and overtime compensation due under the FLSA and the applicable state laws;

d.  An award of statutory penalties as a result of Defendants' failure to comply with the wage notice and wage statement requirements under the applicable state laws;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages and overtime compensation, due to Defendants' policy of misclassifying Plaintiff, FLSA Collective Plaintiffs and Class Members as exempt employees when they are in fact non-exempt employees, pursuant to the FLSA and/or and the applicable state laws;

f.   An award for damages as a result of Defendants breach of contract, promissory fraud, negligent misrepresentation;

g.   An Award for disgorgement as a result of Defendants unjust enrichment;

h.   An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.   Designation of Plaintiff as Representative of the Nationwide FLSA Collective Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiff LINCSTON JONES as Representatives of the Class;

l.   Designation of Plaintiff LINCSTON JONES as Representatives of the Commission Subclass; and

m.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:    June 3, 2022                              Respectfully submitted,

                                    By:    */s/ Brandon Wise*
                                           Brandon Wise, Esq.
                                           PEIFFER WOLF CARR KANE
                                           CONWAY & WISE
                                           Brandon Wise (MO - 67242)

                                    By:    */s/ C.K. Lee\**
                                           C.K. Lee, Esq.
                                           LEE LITIGATION GROUP, PLLC
                                           C.K. Lee (*to be admitted pro hac vice*)
                                           148 West 24th Street, Eighth Floor
                                           New York, NY 10011
                                           Tel.: 212-465-1188
                                           Fax: 212-465-1181

                                           *Attorneys for Plaintiff, Nationwide FLSA Collective Plaintiffs and the Class*

                                           *\*pro hac vice* forthcoming