**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **LINCSTON JONES, individually,** | |
| **and** | |
| **MARCUS STYLES, on behalf of himself and Nationwide FLSA Collective Plaintiffs,** | **Case No. 4:22-cv-00603-RWS** |
| **Plaintiffs,** | |
| **vs.** | |
| **CENTENE CORPORATION, CENTENE MANAGEMENT COMPANY, LLC, WELLCARE HEALTH PLANS, INC., and COMPREHENSIVE HEALTH MANAGEMENT, INC.,** | |
| **Defendants.** | |

## MOTION TO APPROVE SETTLEMENT AND DISMISS WITH PREJUDICE

### I.    INTRODUCTION

Plaintiff Lincston Jones, Plaintiff Marcus Styles, and Defendants (collectively, the "Parties") have reached a settlement in this lawsuit (the "Action"). The Parties' settlement resolves all of Plaintiffs' individual claims including those made under the Fair Labor Standards Act ("FLSA"). The settlement does not resolve the claims of any putative collective members, as no collective was conditionally certified and no other individuals opted into the lawsuit. The Parties, through experienced counsel, have engaged in extensive motion practice, information exchange, and arms-length negotiations through mediation. The negotiations resulted in a fair and reasonable settlement which resolved a *bona fide* dispute between the Parties. Accordingly, Plaintiffs respectfully request the Court approve the Parties' Settlement Agreement (herein "Agreement"),

attached as Exhibit 1, on consent of Defendants.

## II.    PROCEDURAL BACKGROUND

Plaintiff Jones filed this Action on June 3, 2022. (ECF No. 1.) Plaintiff initially alleged two broad claims against Defendants: (1) Defendants, as of March 2020, allegedly misclassified Plaintiff, and other outside salespersons, as exempt from overtime during the time they worked from home due to the COVID-19 pandemic in violation of the Fair Labor Standards Act (FLSA) (Counts I and II) and state wage and hour statutory law (Count III); and, (2) Defendants allegedly failed to pay certain commissions during the open enrollment period in late 2019 and early 2020, which Plaintiff contended constituted a breach of contract, promissory fraud, negligent misrepresentation, and unjust enrichment (Counts IV-VII). (ECF No. 17).

On August 8, 2022, Defendants filed a Motion to Dismiss Counts II Through VII of Plaintiff's Complaint. (ECF No. 15.) In response, Plaintiffs filed their First Amended Class and Collective Action Complaint adding Plaintiff Styles on behalf of himself, a nationwide putative FLSA collective, and a nationwide putative class. (ECF No. 17.)

Defendants again filed a Motion to Partially Dismiss Plaintiffs' First Amended Complaint asking the Court to dismiss Counts III through VII. (ECF No. 19). After the Parties submitted significant briefing and participated in oral argument, the Plaintiffs filed their Second Amended Class and Collective Action Complaint. (ECF No. 40). In doing so, Plaintiffs removed Counts IV through VII from the Complaint.

Defendants then filed their Motion to Dismiss Count III of Plaintiffs' Second Amended Complaint. (ECF No. 41). Ultimately, this Court granted Defendants' Motion and dismissed Count III of Plaintiffs' Second Amended Complaint. (ECF No. 46). As a result, the only remaining claims were Counts I and II: whether, as of March 2020, Defendants and other outside salespersons were

misclassified as exempt from overtime during the time they worked from home due to the COVID-19 pandemic in violation of the Fair Labor Standards Act ("FLSA"). (ECF No. 40, ¶¶ 78–87, 89–98).

In June 2023, the Parties agreed to attend mediation with respect to Plaintiffs' individual claims. (ECF No. 52). Prior to mediation, Defendants informally produced over 400 pages of documents and 13 Excel spreadsheets containing time, pay, and sales activity data. The Parties submitted mediation statements outlining their respective positions supported by facts, exhibits, and legal arguments. Mediation was held on October 3, 2023 with respected neutral Frank Neuner, which resulted in a settlement being reached. All terms of the Settlement are set forth in the Agreement. (Exhibit 1).

### III.    THE FLSA SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

Courts in the Eighth Circuit have routinely held that a district court may approve an FLSA settlement upon a determination "that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *See, e.g.*, *Boland v. Baue Funeral Home Co.*, 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015) (noting unsettled law about whether approval is required, but explaining that absence of Court approval would leave the parties in an uncertain position). *See also, e.g., Meller v. Bank of the West*, 2018 WL 5305562, at *8 (S.D. Iowa Sept. 10, 2018); *Shackleford v. Cargill Meat Solutions Corp.*, 2013 WL 209052, at *2 (W.D. Mo. Jan. 17, 2013) (same).[1]

---

[1] The Eighth Circuit has noted the existence of a circuit split but has never taken a side on the issue of whether 29 U.S.C. § 216 actually requires judicial approval of all FLSA settlements. *See, e.g., Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1026 (8th Cir. 2019) ("There is a circuit split on whether . . . to require judicial approval of all FLSA settlements. . . We have never taken a side on this issue. . . . [W]e need not decide our view on the circuit split today."). Generally, the accepted practice in this Circuit is to assume without deciding that the district court has a duty to exercise some level of review of any proposed FLSA

Here, the Parties' Agreement resolves *bona fide* disputes between the Parties and is fair and equitable to all involved. Additionally, Plaintiffs represent, and Defendants do not oppose, that the attorneys' fees and costs as part of the FLSA settlement are reasonable.

### A.    The Proposed Settlement Resolves a Bona Fide Dispute Between the Parties

"A settlement addresses a bona fide dispute when it reflects a reasonable compromise over issues that are actually in dispute." *Stainbrook v. Minnesota Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017). Here, the settlement resolves a clear and actual dispute between the Parties and the Agreement resolves that dispute through reasonable compromise. Settlement was a direct result of the mediation. Preceding the Agreement were months of litigation and motion practice specific to the merits of Plaintiffs' claims.

From the Action's initiation, litigation has been contentious demonstrating the existence of a *bona fide* dispute. Plaintiff Jones originally brought the action on behalf of himself and all other salespersons who, during the applicable limitations period, were allegedly misclassified and not paid commissions. Defendants responded with a motion to dismiss causing Plaintiffs to file a First Amended Complaint replacing Plaintiff Jones with Plaintiff Styles as the named plaintiff for the putative collective and class claims. Additionally, Plaintiff Jones added an individual claim. Defendants again filed a motion to dismiss. And, after a hearing where issues were identified by the Court in Plaintiffs' First Amended Complaint, Plaintiffs filed a Second Amended Complaint removing allegations and claims related to the commission claims. Defendants filed a third motion

---

settlement. *See, e.g.*, *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) ("[W]e will assume without deciding that the district court has a duty to exercise some level of review of the [proposed FLSA Settlement] Agreement and the attorneys' fee award."); *Johnson v. Thomson Reuters*, 2019 WL 1254565, at *2 n.1 (D. Minn. Mar. 19, 2019) (noting that "[i]t is not entirely clear whether court approval is necessary," but proceeding to evaluate the parties' proposed FLSA collective action settlement to ensure it "is a fair and reasonable resolution of [a] bona fide dispute"); *Jones v. Synergies3 Tec Services*, 2018 WL 6727061, at *1-2 (E.D. Mo. Dec. 21, 2018) (same).

to dismiss the nationwide putative class claims under state law, which the Court granted. The only dispute that remained after months of litigation were Plaintiffs' misclassification claims under the FLSA, which were limited to the time period they worked from home due to the COVID-19 pandemic.

Only after the Action was limited to the FLSA claims did the Parties agree to attend mediation. The Parties submitted comprehensive mediation statements outlining their legal arguments and factual support for their arguments. While Plaintiffs maintain that they were not properly classified as exempt outside salespersons during the COVID-19 pandemic because they were not making outside sales, Defendants maintain that certain exceptions recognized by the DOL apply given the unprecedented emergency. The Parties also have numerous disputes about how any potential damages would be calculated, including the applicable period of time, number of hours worked, the multiplier for any overtime rate, and the validity of liquidated damages. The Parties analyzed their respective risk and ultimately determined that settlement was in their best interest.

The litigation history and participation in the mediation demonstrates a *bona fide* dispute exists between the Parties. Accordingly, the Court should find that the threshold requirement of a *bona fide* dispute is established.

### B.    The Proposed Settlement is Fair and Reasonable

After establishing the existence of a *bona fide* dispute between the parties, the Court then considers whether the proposed settlement is fair and reasonable. Here, after considering the totality of the circumstances leading to this settlement, we believe it should be deemed fair and reasonable.

When determining whether a proposed FLSA settlement is fair and reasonable, the Eighth

Circuit recently endorsed a "totality of the circumstances" approach, including the consideration of five factors that may be relevant to a district court's evaluation of an FLSA settlement. *See Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) (citing with approval *Stainbrook*, 239 F. Supp. 3d at 1126) (identifying five of the many factors a district court may consider "[t]o determine whether settlement terms are fair and equitable to all parties"). This approach ensures "the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights." *King v. Raineri Constr.*, LLC, No. 4:14-CV-1828 (CEJ) (E.D. Mo. Feb. 12, 2015) (citing *Lliguichuzhca v. Cinema 60, LLC.*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).

The five factors a court considers when determining the fairness of an FLSA settlement are: "(1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." *Stainbrook*, 239 F. Supp. 3d at 1126 (citing *King v. Raineri Constr., LLC*, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015)).

Before analyzing the five factors supporting the Agreement's fairness, Plaintiffs note that the Settlement is presumptively valid because it was negotiated at arm's length by experienced counsel with the assistance of a highly regarded mediator, Frank Neuner. *See, e.g.*, *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Meller*, 2018 WL 5305562, at *6 (holding that settlement was presumptively valid, given, among other things, "the arm's length negotiations supervised by experienced class action mediator" and "the substantial experience of both plaintiff and defense attorneys").

Irrespective of the Agreement's presumptive validity, each of the five factors for evaluating an FLSA settlement all weigh in favor of this Court finding it to be fair and reasonable. First, the Parties engaged in substantial, contentious, litigation preceding the mediation. Defendants filed three motions to dismiss and Plaintiffs amended their complaint twice. (ECF Nos. 1, 15, 17, 19, 40, and 41). Furthermore, Defendants produced extensive informal discovery to ensure the Parties had sufficient information to evaluate the claims, defenses, risk, and potential damages. Accordingly, the first element is met.

Next, each of the Parties benefited from experienced counsel throughout this litigation. Each attorney participating in this matter is experienced in litigating and resolving complex wage and hour disputes and FLSA claims. Each side was afforded an opportunity, through competent counsel, to present argument, analyze risk, and determine likelihood of success. The resolution was reached after extensive litigation, serious negotiation, and compromise by the Parties, so there is no indication of overreaching.

The final factor, probability of success on the merits, also favors approval of the Agreement. While the Parties remain steadfast in their belief of success, they acknowledge risks remain. The outcome is uncertain, particularly given that little authority addresses the impact of an emergency like COVID-19 on the exemption requirements, in addition to the many factual disputes between the Parties noted above. The $45,000 settlement fairly compensates Plaintiffs and eliminates the possibility of a loss on summary judgment, loss at trial, or loss on appeal. The benefit Plaintiffs will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed Agreement. Even after the payment of attorneys' fees and costs, Plaintiffs will receive a meaningful amount representing a reasonable estimate of their potential damages, plus a payment for their general release. (*See* Exhibit 1, § 2(a)–(e)). This is a fair result, given the facts and Defendants'

strong opposition to Plaintiffs recovering any amounts.

The settlement provides for full recovery of alleged back wages and liquidated damages for each of the Plaintiffs.  Pursuant to Plaintiffs' damage calculations,[2] attached as Exhibit 2, Plaintiff Styles' damages (inclusive of liquidated damages) total $3,091.25 while Plaintiff Jones' damages (inclusive of liquidated damages) total $208.03.  For Plaintiff Styles, damages were calculated using his average weekly overtime hours of 4.32 (calculated from overtime worked prior to June 2020), for the relevant the time period (18 weeks), at his average hourly compensation of $19.88 per hour.  For Plaintiff Jones, damages were calculated based on his pre-June 2020 average weekly overtime hours of 0.23, for the relevant time period after June 2020 (22.5 weeks), at his average hourly compensation of $20.23.  Of course, if the Court were to determine that Plaintiffs were properly exempted, they would be owed nothing. Further, even if Plaintiffs were to prevail, it is possible that they may be awarded less potential damages based on reduced assumptions as to applicable period of time, number of hours worked, the multiplier for any overtime rate, and the validity of liquidated damages.

In view of the foregoing, there is no logical reason for Plaintiffs to continue with this litigation, as it is unlikely that Plaintiffs could recover a greater amount than they are receiving through the settlement (well over 100% of their alleged backwages and liquidated damages).  Plaintiffs believe the amount they are receiving from the settlement is a fair result.  Plaintiffs are receiving the full back wages they claim, plus an equal amount in non-wages as consideration for a release of liquidated damages and their general release.  The burdens and expenses of trial are unnecessary and would only increase the Plaintiffs' legal fees, without increasing the amount

---

[2] Defendants have indicated that they do not adopt Plaintiffs' calculations or agree with any of the assumptions used, and continue to dispute that Plaintiffs are owed anything.  In Defendants' view, this amount is generous given the facts and defenses.

potentially due to Plaintiffs. In fact, continuing the litigation and proceeding to trial would be highly risky to Plaintiffs.

Moreover, there is no proportionality requirement with regard to attorneys' fees in FLSA cases, and courts have frequently awarded legal fees based on counsel's lodestar at trial, even though the monetary recovery for plaintiffs was low, and where the lodestar dwarfed the amount that the jury awarded to the claimant. *See, e.g., Wong v. Hunda Glass Corp.*, No. 09-cv-4402 (S.D.N.Y. June 23, 2010) (awarding counsel $100,100 as attorneys' fees when judgment awarded to plaintiff was only $36,953.52); *Chen v. Jin Holdings, et al,* No. 10-cv-0414 (S.D.N.Y. January 31, 2012) (awarding counsel $68,131.14, as attorneys' fees, when the judgment awarded to plaintiff was only $4,665.98, reasoning that "[s]ection 216(b) of the FLSA is designed in part to secure legal representation for those who have been injured, but for whom the monetary damages are too small to encourage a private attorney to take the case"). *See also City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) ("A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts.").

Accordingly, this Court should conclude that the proposed settlement reflects a fair and reasonable resolution of a *bona fide* dispute and approve the Parties' motion.

## IV.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

The FLSA requires courts to award reasonable attorneys' fees to successful plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Generally, "[t]he amount of the fee . . . must be determined on the facts of each case," and "[i]t remains for the district court to determine what fee is reasonable." *Hensley v. Eckerhart*,

461 U.S. 424, 429, 433 (1983).

The Eighth Circuit recently directed district courts to afford "a certain level of deference" when reviewing the amount of attorneys' fees a defendant agrees to pay in an FLSA settlement. *Melgar*, 902 F.3d at 779. As the court explained, any process of reviewing and approving stipulated attorneys' fees in the event of a settlement is more deferential than resolving attorneys' fees in a disputed case." *Id.* at 780 (citing *Hensley*, 461 U.S. at 437). "[A]ny review by the district court [of the agreed-upon attorneys' fees] is light" and should receive court approval so long as "the award is not outside the range of what would be approved." *Id*.

As part of the FLSA settlement in this case, Plaintiffs' counsel will receive a modest amount in attorneys' fees and litigation costs. (*See* Exhibit 1, § 2(e)).

Pursuant to the settlement, Plaintiffs' counsel is to receive $32,500.00. Plaintiffs' counsel represents that it has incurred a lodestar of over $75,465 litigating this case (see Exhibit 3), the total of which is significantly greater than the amount being paid to Plaintiffs' counsel under the Agreement, and greater than the total settlement. Plaintiffs further represent that the contemplated attorneys' fees are inclusive of costs and expenses incurred by Plaintiffs' counsel.

Plaintiffs' counsel's hourly rates have routinely been approved in individual settlements where the lodestar, timesheets and rates were submitted to the Court. Such hourly rates have also been approved in numerous class action settlements, which were based on a percentage of the fund calculation, with a lodestar cross check. *See*, *inter alia, Estrada v. Kingsbridge Marketplace Corp. et al.*, Case No. 17-cv-9890 (S.D.N.Y.), *Tendilla et al. v. Pearlstone Restaurant, LLC et al.*, Case No. 18-cv-8900 (S.D.N.Y.), *Chang v. Philips Bryant Park LLC et al*., Case No. 17-cv-8816 (S.D.N.Y.), *Fteja v. Nusret New York LLC et al.*, Case No. 19-cv-429 (S.D.N.Y.), *Garcia v. Roti Restaurants, LLC*, Case No. 18-cv-9820 (S.D.N.Y.), *Carrasco v. Sompo America Insurance*

*Services LLC et al.*, Case No. 17-cv-7319 (S.D.N.Y.), *Salazar v. P.V. Bakery, Inc. et al.*, Case No. 18-cv-4153 (S.D.N.Y.), *Tavera v. 18 Greenwich Avenue, LLC et al.*, Case No. 19-cv-8258 (S.D.N.Y.), *Patterson v. Chipotle Mexican Grill, Inc. et al.*, Index No. 54446/2020 (Westchester County), *Pacheco et al. v. Chickpea at 14th Street Inc. et al.*, Case No. 18-cv-251 (S.D.N.Y.), *Vazquez et al. v. Eataly America Inc. et al.*, Index No. 156933/2018 (New York County), *Delijanin v. Wolfgang's Steakhouse Inc. et al.*, Case No. 18-cv-7854 (S.D.N.Y.).

Plaintiffs' counsel represents that it has invested significant time and resources into litigating this matter vigorously. Plaintiffs agreed, upon retaining Plaintiffs' counsel, that their counsel may receive a percentage of the full settlement amount negotiated or their lodestar. In settling this matter for $45,000, Plaintiffs' counsel agreed to receive a reduced amount, amounting to less than 50% of their lodestar, in order to resolve the matter. Plaintiffs represent and maintain— and Defendants do not oppose—that their counsel's fees and costs of $32,500.00 are fair and reasonable given that their lodestar greatly exceeds such amount. Such work done by Plaintiffs' counsel includes interviewing the Plaintiffs, investigating the identity of Defendants, preparing a Complaint, preparing damages calculations, preparing submissions to the Court, attending conferences, preparing discovery requests, motion practice, correspondence, negotiating with Defendants' counsel, preparing and revising the settlement agreement, and preparing and revising this submission. In view of the foregoing, and as agreed to by Plaintiffs, Plaintiffs' counsel maintains that their request of $32,500.00, which provides a negative multiplier on their represented lodestar of more than $75,000, should be approved. Defendants do not oppose Plaintiffs' counsel's request.

Considering the above, the amount in controversy, the material facts, prior litigation, and the mediation, the Agreement's award of attorneys' fees is reasonable.

## V.    <u>CONCLUSION</u>

For all the above reasons, the Parties submit that the settlement warrants approval in full. Accordingly, the Parties request the Court to grant this motion and sign and enter the accompanying proposed order approving the settlement.

Respectfully submitted this 21st day of November 2023.

By: */s/ C.K. Lee*
C.K. Lee, Esq.
LEE LITIGATION GROUP, PLLC
C.K. Lee (*admitted pro hac vice*)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 21st day of November 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system to be served by operation of the Court's electronic filing system upon the following:

Patricia J. Martin
LITTLER MENDELSON P.C.
600 Washington Avenue, Suite 900
St. Louis, MO  63101

Breanne Sheetz Martell
LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA 98101-3122

Steven Kaplan
Camellia Mokri
LITTLER MENDELSON, P.C.
815 Connecticut Avenue, N.W., Suite 400
Washington, DC  20036

Brandon Wise
PEIFFER WOLF CARR KANE CONWAY & WISE
818 Lafayette Avenue, Floor 2
St. Louis, MO 63104

*/s/ C.K. Lee*
C.K. Lee